# ST. LOUIS & CHICAGO RAILWAY COMPANY ET AL.

## v.

# D. A. DRENNAN.

*Railroad—Construction—Liability for Trespasses of Contractors—Master and Servant—Evidence—Instructions.*

1. A railroad company is liable for the trespasses committed by contractors who have undertaken to construct its road on its behalf.

2. In an action of trespass to recover damages for a wrongful entry by the servants of the defendant railway company upon the plaintiff's premises for the construction of its road, it is *held:* That the evidence shows that the persons actually committing the trespasses complained of, were, as to the plaintiff, servants of the defendant company and therein acted as such in good faith and in the line of their employment; that it was unnecessary to show in the first instance the particular contract, or that there was an express contract between the railway company and those acting on its behalf; that it was sufficient to show that they undertook to construct the road for the company; that the declarations of a director are binding on the company; that it was immaterial to the plaintiff's *prima facie* case whether his

land was on the line of the road as shown by the map of the line or any variation of it duly ordered; and that the president of the company was properly found to be personally liable.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. CONKLING & GROUT, for appellants.

Messrs. PATTON & HAMILTON, for appellee.

Contractors are the servants and agents of the railroad company, and their tortious acts are properly chargeable to the company. Lesher v. Wabash Nav. Co., 14 Ill. 85; Hinde v. Wabash Nav. Co., 15 Ill. 72; C., St. P. & F. L. R. R. Co. v. McCarthy, 20 Ill. 385; R., R. I. & St. L. R..R. Co. v. Wells, 66 Ill. 321.

In Lesher v. Wabash Navigation Co., *supra*, the court forcibly states the law: " It is no answer to say that the contractors were bound by their contract to furnish all the materials at their own expense, and for which they were to receive full compensation. The public were not bound to know the relations existing between the company and their servants. It was enough that they saw them engaged in the erection of the works of the company, and under the direction of the company's engineer. The person who was injured by reason of acts done by those in the employ of the company and in pursuance of their charter, had a right to look to the principal, who alone had authority to direct the acts to be done, for compensation, and was not bound to seek redress from every servant who cut a tree or removed a stone. Were the rule otherwise, the company might, by the employment of irresponsible servants, compel the owner of land to stand by and see it stripped of all that made it valuable, without a hope of remuneration."

There can be no question, we think, respecting the liability of appellants. In trespass there is no distinction between principals and agents. All concerned in the tortious act are

St. L. & C. Ry. Co. v. Drennan.

equally liable, whether they commit the actual trespass or direct or advise it to be done.    Whitney v. Turner, 1 Scam. 253;  Gilson v. Wood, 20 Ill. 37;  Olsen v. Upsahl, 69 Ill. 273.

A railroad is liable in trespass for taking possession and building its road over land before condemnation without the consent of the owner.    C. & I. R. R. Co. v. Davis, 86 Ill. 20.

PLEASANTS, J.    Appellee recovered judgment below upon a verdict for $4,760.44 damages, in an action of trespass *quare clausum*, for entering upon his land and cutting ditches and throwing up embankments thereon, without right, in the construction of the line of road of the St. L. & C. Ry. Co., of which appellant Wing was president.   If the defendants were liable, the amount of the judgment was quite reasonable, upon the evidence.

The proof is that a company under the name of H. H. Cooley & Co., consisting of a brother and brother-in-law of appellant Wing, made a contract with the railway company for the construction of its road, which contract was not in evidence nor were the particular provisions of it otherwise shown; that appellant was the attorney in fact of said construction company and managed its business; that, as such, he made a contract with the firm of B. F. Johnson & Company whereby the latter agreed to construct that portion of the road between Litchfield and Springfield on a certain line "as shown by a map designating the surveys, and by profiles, both on file in the office of the chief engineer of the St. L. & C. Ry. Co., with such variations as should be determined upon by H. H. Cooley & Company;" that as such he also notified these subcontractors to commence the work "as per (said) contract" that they then underlet the construction of four sections, being four miles, to one C. A. King, who, in the execution of his contract, with hands, teams and tools, went upon plaintiff's land and committed the trespasses complained of.   They were so engaged for about ten days.

It further appears that Wing wrote the body of a letter purporting to be signed by H. H. Cooley & Company, though the signature was not proved, which was addressed to and received by B. F. Johnson & Company, stating that it was

"considered advisable by the executive committee of the St. L. & C. Ry. Co. to change the line of survey commencing at section nineteen and running north to Springfield, and requesting them to await definite instructions in the matter, and suspend operations on work along the line north of section nineteen if anything is being done. Wing was one of the two members who composed that committee, the other being the secretary of the railway company. Plaintiff's land was in section thirty-one north of nineteen. Johnson & Company acted on this letter and suspended operations accordingly, but were paid for the work done by King and his hands on plaintiff's land, upon estimates by the chief engineer of the railway company, in drafts approved by the executive committee. The line as changed was about four miles away from plaintiff's land.

It was not positively shown that appellant Wing, or the railway company, by any of its officers, ever directed these subcontractors to go upon plaintiff's land or knew that they were going or had gone upon it. Nor does it appear from any map or profile or any other instrument or paper of the company that his land was upon the line of its survey, or of any variation thereof determined upon by Cooley & Company, and because of the want of such proof, and of the non-production of any contract of the railway company with Cooley & Company, or proof of its contents, it is claimed on behalf of appellant that no case is properly made against them, or either of them; and, further, that the court erred in admitting evidence and in giving and modifying instructions asked.

We think it was unnecessary to show, in the first instance, the particular contract, or that there was an express contract between the railway company and Cooley & Company. It was enough to show that Cooley & Company undertook to construct the road for the railway company; for that would establish the relation of master and servant between them, as to plaintiff. But Lockridge, who was a director, says the railway company was constructing a line of road from Litchfield to Springfield, and that a contract was made with Cooley & Company, though he had forgotten, as if he had once known, its

date, and he was not contradicted.   If he was a " figure head," which is a creature unknown to the law in such a connection, he was so made by the company, and was none the less a director, for whose acts and declarations, as such, it is responsible as for those of directors who are not figure heads.   But he might know that the contract was made without being a director.   He testifies to the fact, and if it was important to the defendants to show its provisions, they should have introduced it.   Cooley & Company had no franchise of their own for building a railroad.   Under that of the defendant company, with its consent, the work was done; and that fact made Cooley & Company and all the sub-contractors its servants. Lesher v. Wabash Navigation Co., 14 Ill. 85; West v. St. L., A. & T. H. R. R. Co., 63 Ill. 545; Balsley v. St. L., A. & T. H. R. R. Co., 119 Ill. 68.   For whatever they did then, *bona fide*, as such and in the line of their employment, the master is responsible.   It is unnecessary to cite authority for this general proposition, and for its application to torts of this particular character we refer only to R. R. I. & St. L. R. R. Co. v. Wells, 66 Ill. 321, and cases there cited.

For the same reason it was unnecessary to produce the map and files mentioned in the Johnson contract, or even the contract itself, which, however, was produced under the ruling of the court.   The line so shown was, by the contract, made subject to any variation that should be determined on by Cooley & Company, and besides, it was immaterial to plaintiff's *prima facie* case whether his land was or was not on the line so shown or any variation of it so ordered.   Nor was it required that he should prove any specific order by the company or any of its officers or agents to King to enter upon this land. That it was done for the company by its servants, as such, in good faith and within the line of their employment, was sufficient to charge it with the responsibility therefor.   Specific orders to the contrary, had they been given, would not have protected it.   Duty to the plaintiff required it to prevent such entry, and for that purpose, if necessary, to be on the ground by its proper agents and actually know what was being done or about to be done.   It is chargeable as if it did have such

actual knowledge. Yet it took no step to prevent the trespass. On the contrary its servants, Cooley & Company, paid Johnson & Company for what they did or caused to be done by King; and the railway company itself, as nearly as we can ever get to such a body, by the executive committee of its board of directors, actually approved the payment.

Lockridge knew who was president and who was secretary, and who composed the executive committee of the board of which he was a member, and testified to the official position and activity of appellant Wing. He was recognized and acted as president and member of that committee, as Johnson also testified. That was competent and sufficient evidence of the facts.

That in the commission of these trespasses the persons actually committing them were, as to the plaintiff, servants of the railway company, and therein acted as such, in good faith and within the line of their employment, there was abundant evidence, and of its liability for their action we entertain no doubt.

The personal liability of the defendant Wing is equally clear from the proof. If he had done nothing more than sign the notice to Johnson & Company to proceed with the work of construction, as the agent of Cooley & Company for that purpose, it would have been otherwise, as the court instructed the jury. But he was and did much more. He was the managing agent of that firm, acting under a power of attorney during a part of the time. In that capacity he served it according to his will and judgment in the matter. So, also, as an officer of the railway company, he distinctly and voluntarily aided it to do what was done upon the plaintiff's land.

In this view the court properly modified the instruction in respect to which complaint is made by striking out what would have clearly tended to mislead the jury.

Perceiving no material error in the record and satisfied that justice was done, the judgment will be affirmed.

*Judgment affirmed.*